IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KUBIE ALI WUHOLO,                              6:11-cv-01194-MA

        Petitioner,                     OPINION AND ORDER

  v.

JEFF PREMO,

        Respondent.


TONIA L. MORO
19 S. Orange Street
Medford, Oregon 97501

    Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
SAMUEL A. KUBERNICK
Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

    Attorneys for Respondent

MARSH, Judge

    Petitioner, an inmate at Oregon State Penitentiary, brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 seeking

1 - OPINION AND ORDER

relief on the grounds of prosecutorial misconduct and ineffective assistance of trial and appellate counsel. For the reasons set forth below, the amended petition is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

At trial, the state called the victim, investigating law enforcement officers, the physician's assistant that treated the victim's injuries, and the victim's brother to testify. Petitioner did not call any witnesses. Resp.'s Exh. 104, at 133. The victim was the only testifying witness with firsthand knowledge of the crime.

The victim, petitioner's former fiancée, testified that petitioner physically and psychologically tortured her throughout the early morning of February 3, 2000 in the basement of their northeast Portland home. Paranoid that the victim had been unfaithful in their relationship and that he was not the biological father of their two children and unborn third child, petitioner confronted the victim when she returned from work at 1:30 am. Resp.'s Exh. 103, at 55-58. When the victim denied she had been unfaithful, petitioner insisted that she take a polygraph on a television talk show. Id. After initially refusing to take a polygraph on television, the victim finally relented after a sometimes heated conversation that lasted between thirty and sixty minutes. Id. at 59.

Rather than go to bed, however, petitioner led the victim to the basement of their home after promising her a surprise. Id. at 60. When they arrived in the basement, petitioner fashioned a noose out of two straps and tied it to a pipe that ran along the ceiling. Id. at 62-66. Petitioner forced the victim to remove her clothing and stand on a soap bucket with the noose around her neck. Id. at 68-72. Over the course of the next several hours, petitioner beat the victim with a metal rod, occasionally taking breaks to smoke a cigarette and drink alcohol.

During one break, petitioner agreed that if the victim confessed to infidelity he would let her down from standing on the bucket and stop beating her. Id. at 86. When the victim tried to stop the torture by confessing, however, petitioner kicked the bucket from under her feet, causing the victim to hang from the neck. Id. at 86-89. Petitioner picked the victim up when she lost consciousness and eventually untied the noose. Id. at 89-91.

With the victim laying on the floor, petitioner told her that the beating would continue until she revealed the names of the men with whom she had been unfaithful. Id. at 91. When the victim was reluctant to fabricate names, petitioner beat her with the metal rod, kicked and sat on her pregnant stomach, and urinated on her. Id. at 92-94. After the victim finally said some names, petitioner repeatedly stated that he was going to kill her and went to retrieve something from another area of the basement. Id. at 96.

The victim tried to escape up the stairs, and locked the door leading from the main house to the basement, but petitioner broke through the door and caught her before she could leave the house. Id. at 96-97. The noise awoke the children, who witnessed petitioner dragging the victim back to the basement by her hair. Id. at 97-99. Petitioner dragged the victim to the stairs leading to the basement, at which point she began walking to avoid further injury. Id. at 98-99. The victim testified that petitioner took her to the basement so nobody could hear the abuse take place. Id. at 138. Once back in the basement, petitioner resumed beating the victim by striking her with his hands and fists, pulling her hair, and hitting her head against the wall. Id. at 98-99.

After at least five hours of beating the victim, petitioner became exhausted and went upstairs. Id. at 100-02. After making the children breakfast, petitioner forced the victim to call a friend and the victim's brother to confess to infidelity. Id. at 102-05. Afterward, petitioner went to sleep with the only telephone in the house under his arm. Id. at 106. Once petitioner was asleep, the victim's son retrieved the telephone from under petitioner's arm, and the victim called the police. Id.

After a trial to the court, the state trial judge convicted petitioner of First Degree Kidnapping, Second Degree Assault, Fourth Degree Assault, and Menacing, but acquitted petitioner on charges of Attempted Murder and Harassment. Id. at 193-95. The

court sentenced petitioner to 90 months on the Kidnapping count and 70 months on the Second Degree Assault count, to run consecutively to each other. Resp.'s Exh. 101. Additionally, the court sentenced petitioner to six months imprisonment on the Menacing and Fourth Degree Assault counts, to be served concurrently with the Kidnapping and Second Degree Assault sentences. Id.

Petitioner appealed his conviction to the Oregon Court of Appeals. Finding no "arguably meritorious" issue on appeal, petitioner's appellate counsel filed a brief pursuant to State v. Balfour, 311 Or. 434, 814 P.2d 1069 (1991). Resp.'s Exh. 107. Petitioner declined to submit a "Section B" portion of the brief wherein he could have raised any issue. Id. at 3. The Oregon Court of Appeals affirmed without opinion and petitioner did not seek review in the Oregon Supreme Court. Resp.'s Exh. 108; State v. Wuholo, 185 Or.App. 163, 58 P.3d 853 (2002).

Petitioner filed a petition for state post-conviction relief alleging that petitioner's sentence was imposed in violation of his right to a trial by jury, as well as several grounds of ineffective assistance of trial and appellate counsel and prosecutorial misconduct. Resp.'s Exh. 109. The state court denied the petition for post-conviction relief. Resp.'s Exh. 128. Petitioner appealed to the Oregon Court of Appeals raising some, but not all, of the claims raised to the post-conviction trial court, but the court affirmed without opinion. Resp.'s Exh. 129-30, 134; Wuholo v.

Belleque, 241 Or.App. 724, 250 P.3d 993 (2011). The Oregon Supreme Court denied review. Resp.'s Exh. 133; Wuholo v. Belleque, 350 Or. 574, 258 P.3d 1240 (2011).

Petitioner subsequently filed the instant petition alleging four grounds for relief, each including several subrgounds. In Ground One, petitioner raises four subgrounds of prosecutorial misconduct. Amended Pet. Exh. B at 1. In Grounds Two, Three, and Four, petitioner alleges ineffective assistance of trial and appellate counsel, with multiple subgrounds. Id. at 2-3, Exh. B at 2-3.

## DISCUSSION

### I. Procedural Default

Generally, a § 2254 petitioner must exhaust his available state remedies before filing a habeas petition in federal court. Castille v. Peoples, 489 U.S. 346, 349 (1989). A state prisoner satisfies the exhaustion requirement by "fairly presenting" his claims to the appropriate state courts at all appellate stages afforded under state law. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 915-16 (9th Cir. 2004). Raising a claim in a procedural posture in which its merits will not be considered absent special and important reasons does not constitute a fair presentation. Castille, 489 U.S. at 351; but see Casey, 386 F.3d at 918 n.23 (noting that a claim *is* exhausted *if* the state appellate court expressly addresses the claim, whether or

6 - OPINION AND ORDER

not it was fairly presented). In addition, a petitioner's claim may be procedurally defaulted if the state court's resolution of the claim rested on an independent and adequate state ground. Casey, 386 F.3d at 920. Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007); Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Respondent argues that Grounds One; Two (C), (E), and (G)-(I); Three, and Four are procedurally defaulted. I agree.

### A. Ground One - Prosecutorial Misconduct

In Ground One, petitioner raises four subgrounds of prosecutorial misconduct. Citing Palmer v. State, 318 Or. 352, 867 P.2d 1368 (1994), the state post-conviction trial court refused to consider the merits of petitioner's prosecutorial misconduct claims because petitioner failed to raise the claims in the underlying criminal proceedings, including on direct appeal. Resp.'s Exh. 127 at 10. The Palmer procedural bar to consideration of the merits in state post-conviction proceedings is an independent and adequate state ground. Lerma v. Palmateer, 2004 WL 2755816, at *1 (9th Cir. Dec. 2, 2004); Frazier v. Hill, No. 3:05-cv-01416-ST, 2011 WL 740912, at *5 (D. Or. Feb. 22, 2011). Thus, Ground One is procedurally defaulted. See Casey, 386 F.3d at 920. Petitioner

has not demonstrated either cause and prejudice for the procedural default, or that failure to consider the prosecutorial misconduct claims on the merits will result in a miscarriage of justice. Accordingly, habeas relief is unwarranted on Ground One.

**B.   Ground Two - Ineffective Assistance of Trial Counsel**

In Ground Two, petitioner raises ten subgrounds (A-J) for relief, primarily on the basis of ineffective assistance of trial counsel. Respondent argues that subgrounds (C), (E), and (G)-(I) are procedurally defaulted because petitioner did not raise them in his post-conviction appeal. I agree.

While petitioner raised these subgrounds before the state post-conviction trial court, he failed to raise them on post-conviction appeal. Compare Resp.'s Exh. 109 with Resp.'s Exh. 129, 130. Thus, petitioner did not fairly present these claims to the appropriate state courts at all appellate stages afforded under state law. See Baldwin, 541 U.S. at 29; Casey, 386 F.3d at 915-16. Accordingly, Ground Two, subparts (C), (E), and (G)-(I) are procedurally defaulted. Petitioner has not demonstrated either cause and prejudice for the procedural default, or that failure to consider the claims on the merits will result in a miscarriage of justice, and habeas relief is accordingly precluded.

///

///

### C. Grounds Three & Four - Ineffective Assistance of Appellate Counsel

In Grounds Three and Four, petitioner claims that he is entitled to habeas relief on eight subgrounds of ineffective assistance of appellate counsel. Petitioner raised the claims in Ground Three before the state post-conviction trial court, but failed to raise them on post-conviction appeal. Compare Resp.'s Exh. 109 at 10-11, with Resp.'s Exh. 129, 130. Petitioner did not raise the claims contained in Ground Four in any state proceeding. Resp.'s Exh. 109, 129, 130. Because petitioner did not fairly present these claims to the appropriate state courts at all appellate stages afforded under state law, Grounds Three and Four are procedurally defaulted. See Baldwin, 541 U.S. at 29; Casey, 386 F.3d at 915-16. Petitioner has not demonstrated either cause and prejudice for the procedural default, or that failure to consider Grounds Three and Four on the merits will result in a miscarriage of justice. Habeas relief is accordingly precluded.

## II. The Merits

A federal court may not grant habeas corpus relief unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1),

9 - OPINION AND ORDER

(2); Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 785-86 (2011). Factual findings of the state courts are presumed to be correct, and this presumption may only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In Ground Two (A), (B), (D), (F), and (J), petitioner alleges that he is entitled to habeas relief due to ineffective assistance of trial counsel. In Strickland v. Washington, the Supreme Court established a two-part test to determine whether a defendant has received constitutionally deficient counsel. 466 U.S. 668, 687 (1984). Under this test, petitioner must not only prove that counsel was deficient, but also that the deficient performance prejudiced petitioner's defense. Williams v. Taylor, 529 U.S. 362, 390 (2000); Strickland, 466 U.S. at 687.

To prove deficiency of performance, petitioner "'must show that counsel's representation fell below an objective standard of reasonableness.'" Williams, 529 U.S. at 390-91 (quoting Strickland, 466 U.S. at 688). "To establish prejudice [petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 391 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

### A. Ground Two (A) - Failure to Call a Forensic Expert

In Ground Two (A) petitioner alleges that:

10 - OPINION AND ORDER

> Trial counsel failed to call a forensic expert to testify that the alleged victim's description of the manner in which petitioner assaulted [the victim] and inflicted injuries upon her could not be reconciled with the injuries observed on her body. Such expert could further have testified that the alleged victim's injuries were consistent with her having fallen on the basement stairs of her residence.

Amended Pet. Exh. B at 1 (bracketed text in original). The state post-conviction court concluded that trial counsel was not deficient, and specifically found that:

> Trial counsel retained an expert witness, Dr. Ray Grimsbo, to investigate petitioner's claims. Both the available evidence and the analysis of that evidence performed by the expert witness undermined petitioner's defense. Dr. Grimsbo reviewed pictures of the victim's injuries and went to the alleged crime scene. Dr. Grimsbo concluded that the victim's injuries were inconsistent with a fall and consistent with the victim's allegations.

Resp.'s Exh. 126, 127 at 5. In an affidavit, petitioner's trial counsel confirmed that he retained Dr. Grimsbo, that Dr. Grimsbo reviewed pictures of the injuries and went to the scene of the crime, and that he ultimately found that the victim's injuries were consistent with being beaten with a "shower curtain rod," and not with falling down the stairs. Resp.'s Exh. 115 at 1. Accordingly, petitioner's counsel reported that Dr. Grimsbo advised that counsel "would not want me to be a witness for your client." Id.

The state post-conviction court's finding that trial counsel's failure to call a forensic expert was not deficient is reasonable in light of Dr. Grimsbo's unequivocal opinion that the victim's

11 - OPINION AND ORDER

injuries were consistent with her testimony of the alleged crime and inconsistent with petitioner's theory. Additionally, petitioner has submitted no evidence that trial counsel could have found any expert that would have testified that the victim's injuries were consistent with falling down the stairs and inconsistent with being beaten by a metal rod. See <u>Wildman v. Johnson</u>, 261 F.3d 832, 839 (9th Cir. 2001). Habeas relief is not warranted on Ground Two (A) because the state post-conviction court's denial of habeas relief is neither contrary to, nor an unreasonable application of, clearly established federal law.

**B.   Ground Two (B) - Failure to Call Additional Witnesses**

In Ground Two (B), petitioner claims that trial counsel was ineffective in failing to call eight witnesses. The state post-conviction court found that trial counsel was not inadequate for failing to call petitioner's suggested witnesses because trial counsel had interviewed the witnesses; none of the witnesses were eyewitnesses; and the testimony they could have provided was of petitioner's peaceful character, which would have opened the door to other prejudicial character evidence. Resp.'s Exh. 127 at 5.

With respect to the first prong of the <u>Strickland</u> test, the state post-conviction court's findings are entitled to deference. Trial counsel confirmed that petitioner's suggested witnesses would not have been helpful because they could have only provided evidence of petitioner's peaceful character that would have opened

12 - OPINION AND ORDER

the door to additional prejudicial evidence. Resp.'s Exh 115 at 2. The decision not to call petitioner's additional witnesses, then, did not fall below an objective standard of reasonableness. Additionally, petitioner cannot establish prejudice under the second prong of the <u>Strickland</u> test because he has failed to submit any evidence at any stage, other than his speculation, concerning what the witnesses would have testified to, if called. See <u>Dows v. Wood</u>, 211 F.3d 480, 486-87 (9th Cir. 2000); <u>Carlton v. Hill</u>, No. 3:06-cv-00857-JE, 2010 WL 5071199, at *4 (D. Or. Oct. 8, 2010). Thus, habeas relief is inappropriate on Ground Two (B).

### C. Ground Two (D) - Failure to Advise of the Right to Testify

In Ground Two (D), petitioner alleges that:

> Petitioner's waiver of right to testify in his own behalf was not knowing, voluntary and intelligent. Trial counsel failed to discuss with petitioner to a level of petitioner's understanding, this right to testify on his own behalf. Counsel failed to explain to petitioner that he would almost certainly be convicted of Kidnapping in the First Degree and Assault in the Second Degree absent his testimony. As a result, petitioner did not object when counsel failed to call him as a defense witness. Had petitioner testified he would have refuted the alleged victim's description of the alleged criminal incident.

Amended Pet. Exh. B at 2. The state post-conviction court concluded that counsel was not ineffective in this regard, finding that:

> 8. Petitioner waived a jury trial knowingly, voluntarily, and intelligently and made an independent decision not to testify after thorough

13 - OPINION AND ORDER

>    discussions with trial counsel. Petitioner signed a written Waiver of Jury Trial.
>
> 9. Trial counsel and petitioner discussed his right to testify if he so desired. Mr. Wuholo realized, however, that his impeachment on the stand would have hurt the defense. Mr. Wuholo made a knowing, voluntary, and intelligent decision not to testify after numerous discussions on this issue.

Resp.'s Exh. 127 at 7.

Trial counsel averred that he and petitioner discussed the right to testify on "numerous occasions," but that petitioner realized "that his impeachment on the stand would have hurt the defense." Resp.'s Exh 115 at 2. Additionally, trial counsel stated that petitioner's "waiver of jury trial was knowing, voluntary, and intelligent," and that he advised petitioner that "given the emotional nature of the case, a jury might ignore the law on Attempted Murder, a charge of which he was in fact acquitted by Judge Bergman." Id.

The state post-conviction court's denial of habeas relief on this ground is entitled to deference. In light of the evidence before it, the state court's factual findings are not unreasonable, and the resultant legal conclusions are neither contrary to, nor an unreasonable application of clearly established federal law. Habeas relief is not warranted on Ground Two (D).

>    **D.  Ground Two (F) - Failure to Move for Judgment of Acquittal on the Kidnapping Count**

In Ground Two (F), petitioner alleges:

> Trial counsel failed to move for a judgment of acquittal against petitioner's charge of Kidnapping in the First Degree on the basis that the asportation of the alleged victim was merely incidental to the crime of Assault in the Second Degree. Because, taken in a light most favorable to the state, the court was required to find that any asportation of the victims [sic] was necessarily incidental to the objective of assaulting her, petitioner was entitled to acquittal as a matter of law. The Oregon Supreme Court precedent establishing this basis for acquittal [State v. Garcia] was in existence years before petitioner's trial. Counsel's failure to prepare himself on the applicable law resulted in actual prejudice to petitioner who received a sentence of 90 months on this charge.

Amended Pet. Exh. B at 3. The state post-conviction trial court found that counsel was not ineffective because "[p]etitioner's Kidnapping I conviction is proper and well-supported by the evidence. A Motion for Judgment of Acquittal would not have been successful. The Kidnapping was not merely incidental to petitioner's remaining crimes and petitioner substantially interfered with the victim's personal liberty and satisfied the asportation element." Resp.'s Exh. 127 at 8.

The state post-conviction court's conclusion is entitled to deference. Trial counsel's decision not to move for a judgment of acquittal did not fall below an objective standard of reasonableness or result in prejudice to petitioner.

Under Oregon law, to convict a defendant of the crime of Kidnapping, the state must prove that the "defendant, (1) with intent to interfere substantially with [the victim's] personal liberty, (2) took the victim from one place to another (3) without

15 - OPINION AND ORDER

consent or legal authority." State v. Mejia, 348 Or. 1, 6, 227 P.3d 1139 (2010) (citing Or. Rev. Stat. § 163.225(1)(a)). To be convicted of Kidnapping in the First Degree, the defendant must have committed the kidnapping for one of the purposes listed in Or. Rev. Stat. § 163.235(1). The Oregon Supreme Court clarified, however, that a defendant may only be convicted of Kidnapping where the kidnapping "is not incidental to another crime." State v. Garcia, 288 Or. 413, 423, 605 P.2d 671 (1980). A kidnapping is not incidental to another crime "if the defendant had the intent to interfere substantially with the victim's personal liberty." Id.

Petitioner argues that trial counsel was deficient in failing to move for a judgment of acquittal on the Kidnapping in the First Degree charge because petitioner's movement of the victim was merely incidental to his assault of her. I disagree.

At the time of petitioner's trial, the Oregon Court of Appeals had held that facts similar to petitioner's constituted Kidnapping. In State v. Thomas, the defendant surprised the victim in her home, locked the front door, threatened to kill the victim, pulled her by her hair into the bathroom, forced her to sit on the toilet, and demanded "under treat of death" that she write a note assigning him a one-half interest in her house and truck. 139 Or.App. 308, 310, 911 P.2d 1237 (1996). When the defendant left the bathroom to retrieve pen and paper, he repeatedly threatened to kill her if she left. Id. Upon returning, the defendant closed the door to the

16 - OPINION AND ORDER

bathroom and barred it by opening a drawer. Id. After forcing her to write the note, the defendant raped the victim before fleeing after a friend of the victim entered the house and forced her way into the bathroom. Id. at 310-11. From this, the Oregon Court of Appeals found "ample evidence from which a rational jury could find beyond a reasonable doubt that defendant intended to interfere substantially with the victim's liberty." Id. at 313.

Similarly, here, there was ample evidence from which a trier of fact could find that petitioner intended to substantially interfere with the victim's liberty. The victim testified that petitioner took her down to the basement so that nobody could hear the abuse take place. Resp.'s Exh. 103, at 138. Petitioner forced the victim to stand on a soap bucket with a noose around her neck such that if she tried to move off the bucket she would hang by the neck. Id. at 68-72. At one point, when the victim attempted to run out of the house, petitioner prevented her escape by following her upstairs and dragging her back down into the basement by her hair. Id. at 96-99. Finally, even when petitioner went to bed, he slept with the only telephone in the house under his arm. Id. at 106. All told, the torture lasted at least five hours, during substantial portions of which the victim was unable to leave her confinement to the bucket on which she forced to stand with a noose around her neck, and during other periods petitioner physically prevented her from leaving the basement. See id. at 100-02.

17 - OPINION AND ORDER

Petitioner's reliance on State v. Wolleat, 338 Or. 469, 111 P.3d 1131 (2005), is misplaced. The Wolleat court held that to be convicted of Kidnapping "a defendant must intend either to move the victim a 'substantial distance' or to confine the victim for a 'substantial period of time,'" and that the defendant there did not have the requisite mental state where he moved the victim 15 to 20 feet from the bedroom to the living room in the course of an assault. Id. at 475, 478; but see Mejia, 348 Or. at 11-12 (holding that such intent may be shown where the defendant moved the victim "from her front doorway into her bedroom, took away her cell phone, stifled her screams, physically restrained her, pinned her down and choked her when she attempted to escape," thereby confining her for "about an hour and a half"). Here, petitioner confined the victim to the basement of their home for more than five hours, forced her to stand on a bucket with a noose around her neck for much of that time, and dragged her back to the basement when she tried to escape. Hence, even under Wolleat, the post-conviction court reasonably found that a motion for judgment of acquittal would not have been successful.

Trial counsel's performance in not making such a motion was neither deficient nor prejudicial to petitioner. The state post-conviction court's conclusion was neither contrary to, nor an unreasonable application of, clearly established federal law. Habeas relief is not warranted on this ground.

18 - OPINION AND ORDER

### E. Ground Two (J) - Failure to Seek DNA Testing of Petitioner's Children

Finally, petitioner alleges that "[t]rial counsel failed to file a motion requiring DNA testing of petitioner's alleged children to establish that they were not his children and to thereby impeach the victim's testimony that she had not cheated on petitioner." Amended Pet. Exh. B at 3. The state post-conviction court rejected this claim, finding that "DNA testing results were available at the time of petitioner's trial, and confirmed over a 99% probability that petitioner was the father of his son. Any additional testing on petitioner's son or other children would not have benefited [sic] the defense, particularly since it provided motive for petitioner's actions." Resp.'s Exh. 127 at 9.

The state post-conviction court's conclusion is entitled to deference. Trial counsel averred that "[t]he victim testified at trial that she only admitted to Mr. Wuholo that she had cheated on him to save her life. Furthermore, there was DNA testing done to prove defendant is the father. Finally, not only is cheating irrelevant it only serves to provide motive for Mr. Wuholo's actions." Resp.'s Exh. 115 at 3. Trial counsel's choice not to seek additional DNA evidence was reasonable in light of its limited potential probative value and significant risk of further establishing petitioner's motive to torture the victim. Moreover, even if the DNA evidence could have been helpful in some respect at

19 - OPINION AND ORDER

trial, petitioner has failed to carry his burden of demonstrating prejudice because he has never presented any evidence that DNA testing would have yielded helpful evidence. Thus, the state court's rejection of this ground is neither contrary to, nor an unreasonable application of clearly established federal law. Accordingly, the post-conviction court's determination is entitled to deference. Habeas relief is not warranted on Ground Two (J).

### CONCLUSION

For the foregoing reasons, petitioner's amended petition for a writ of habeas corpus (#24) is DENIED. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this _19_ day of June, 2013.

/s/ Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge

20 - OPINION AND ORDER